SAMUEL B. DERRICKSON v. ISAAC N. QUIMBY.

Where a person desiring a loan makes an application in writing, upon which is an endorsement authorizing a single broker to procure the loan, and the broker leaves copies of such application with a number of persons, one of whom, induced by such application, without the broker's knowledge lends the money, the broker is entitled to his commissions.

This writ brings up a judgment of the Court of Common Pleas of Hudson county affirming a judgment rendered in the above-entitled cause in favor of Derrickson, the plaintiff.

Argued at November Term, 1880, before Justices DIXON, REED and PARKER.

For the prosecutor, *S. B. Ransom.*

The opinion of the court was delivered by

REED, J. This action is brought by the plaintiff to recover commissions which he alleges he earned by bringing together the defendant, Quimby, and a person from whom Quimby borrowed the sum of $12,000.

The evidence which comes up as a state of the case discloses substantially the following facts:

Derrickson was introduced to Quimby, the defendant, in March, 1873.

Quimby told Derrickson, according to the testimony of the latter, that he wished to borrow $10,000 or $12,000, and if he (Derrickson) would introduce Quimby to parties who would make the loan, or if Derrickson would procure the loan, he should have one per cent.

Quimby signed a written application for a loan, upon which was a description of the property, and, in addition

thereto, a written authorization to Derrickson to negotiate the loan; and this paper he delivered to Derrickson. Derrickson made copies of this paper, leaving them with persons whom he thought to be likely to make loans, among whom were Coudert Brothers, on Wall street, New York city.

In April, 1873, Coudert Brothers delivered the copy of the application to Mr. Boyd, who was their agent to make loans in New Jersey, and Mr. Boyd wrote to Mr. Quimby about the loan. In response to this note, Mr. Quimby called at Boyd's office, and entered in an agreement written on the back of the application, by which he agreed to take from Boyd the sum of $12,000.

Mr. Quimby desired this loan to pay off a ten-thousand-dollar mortgage already upon the property, held by a Mr. Collard, and for some other purpose. Mr. Boyd gave his check to Collard for $10,000, and took an assignment of that mortgage. The assignment was made to one Quavada, for whom Coudert Brothers, through Boyd, were acting in making the loan.

Quimby was to pay ten per cent. for the loan, and this was taken out of the remaining $2000. How the balance was paid or how secured does not appear, nor does it appear who received finally the ten per cent.

This presents the case of the plaintiff as it is found in various parts of the testimony of his witnesses.

The defendant, in his testimony, denies the accuracy of the plaintiff's account of the agreement, and states an agreement which defeats, if true, the plaintiff's right of action. We, of course, cannot weigh the testimony, but only decide upon a case which the court below could have deduced from any legal view of its force.

The reasons upon which the prosecutors rely for reversal are, first, that no case was proven, and because the employment, if made, was to procure a usurious loan, and was void; and, second, that competent testimony was excluded and incompetent admitted.

First, I think that, from the evidence offered, it was com-

petent for the court to draw a conclusion that Quimby should respond.

The case is not similar to that of *Vreeland* v. *Vetterlein,* 4 *Vroom* 247, where a property was placed for sale openly in the hands of several brokers, and the sale was made by one, although the purchaser had first received overtures from another of the brokers, and the court held that the first was the only one entitled to commissions.

Here the application for the loan was made through the plaintiff alone.

He distributed copies of the application in those quarters where he thought a lender might be.

Coudert Brothers, lending money for a principal, received one of them. This was by them placed in the hands of Boyd, who was their agent to make loans in New Jersey.

He sought an interview with the defendant, having the application, upon which (as to which there was some proof) was a copy of the authorization by Quimby to Derrickson to negotiate the loan. The production of this application, with this authorization upon it, would have warned Quimby at once that Derrickson was in some way concerned as the cause of Boyd's action. I think that, under such circumstances, the fact that Coudert Brothers, through their agent, Boyd, directly negotiated the loan, could not deprive the plaintiff of his commissions. *Shepherd* ads. *Heddin,* 5 *Dutcher* 334.

Nor upon the other point—namely, that the agreement between the parties was to negotiate a usurious loan—do I think the judgment reversible. The loan was undoubtedly usurious. The evidence is very strongly in the direction that, at the time of the agreement between Derrickson and Quimby, it was understood that the loan must be usurious, or else it could not be made. But, taking the testimony of the plaintiff as true, the court had sufficient to draw its conclusion that the contract was not for a usurious loan; and the weight of testimony is entirely for the court below.

As to the second ground—that the court excluded competent testimony—it appears that a question propounded to

Boyd on cross-examination was excluded. He was asked whether he had ever told Dr. Quimby that Derrickson had nothing whatever to do with the making of the loan. The question was only permissible to break in some particular the force of Boyd's testimony in chief. But if it could have had such an effect at all, it would 'have been so shadowy that its exclusion or admission was within the discretion of the court.

Judgment affirmed, with costs.